**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

PETER YOUNG,

Plaintiff,

v.

BRIAN FISCHER; et al.,

Defendants.

9:12-CV-01642
(MAD/TWD)

---

APPEARANCES:                                      OF COUNSEL:

**PETER YOUNG**
**08-R-0331**
Clinton Correctional Facility
Box 2002
Dannemora, New York 12929
Plaintiff *pro se*

**MAE A. D'AGOSTINO**
**United States District Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff commenced this action by filing a civil rights complaint, together with an application

to proceed *in forma pauperis* ("IFP application"). *See* Dkt. Nos. 1, 2. By a Decision and Order filed

on March 15, 2013, the Court granted Plaintiff's IFP application, but found that the complaint failed to

state a claim upon which relief may be granted, and therefore was subject to dismissal pursuant to 28

U.S.C. §§ 1915(e) and 1915A. *See* Dkt. No. 26 (the "March Order"). In light of his *pro se* status,

Plaintiff was afforded an opportunity to submit an amended complaint. *Id.* at 20.

Plaintiff has submitted an amended complaint in response to the March Order. Dkt. No. 30.

Plaintiff has also filed three motions for preliminary injunctive relief. Dkt. Nos. 24, 34, and 39. For

the reasons set forth below, several of the claims asserted in the amended complaint fail to state a claim upon which relief may be granted and are *sua sponte* dismissed pursuant 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A; the remaining claims in the amended complaint require a response from the named Defendants; and Plaintiff's motions for preliminary injunctive relief are denied.

## II. AMENDED COMPLAINT

**A.      Initial Screening**

In his amended complaint, Plaintiff asserts numerous claims arising out of his confinement at the Auburn Correctional Facility ("Auburn C.F.") against eleven individual Defendants.

The Court must now consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A.  Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).  Therefore, the Court must determine whether Plaintiff may properly maintain his complaint before permitting him to proceed.  Although a court has the duty to show liberality towards *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond," *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), a court also has the responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis*.  "Dismissal of frivolous actions pursuant to 28

2

U.S.C. § 1915(e) is appropriate to prevent abuses of the process of the court," *Nelson v. Spitzer*, No. 9:07-CV-1241 (TJM/RFT), 2008 WL 268215, *1 n.3 (N.D.N.Y. Jan. 29, 2008) (citation omitted), as well as "to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Id.* at 325 (citation omitted).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when the plaintiff paid the filing fee).

When reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure. Rule 8 provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

**B.      General Legal Standards**

*1. Retaliation*

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

*2. Free Exercise of Religion*

Prisoners have long been understood to retain some measure of the constitutional protection

afforded by the First Amendment's Free Exercise Clause. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunie*r, 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)).

To state a First Amendment free exercise claim, a plaintiff must allege (1) that the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) that the challenged practice of the prison officials infringes upon the religious belief; and (3) that the challenged practice of the prison officials furthers some legitimate penological objective." *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988) (citations omitted.)


### *3. Interference with Legal Mail*

Under the First Amendment, prisoners have a right to "the free flow of incoming and outgoing mail." *Davis*, 320 F.3d at 351. A prisoner's right to receive and send mail may be regulated, *see Davidson v. Mann*, 129 F.3d 700, 702 (2d Cir. 1997), "'if it is reasonably related to legitimate penological interests,'" *Rodriguez v. James*, 823 F.2d 8, 12 (2d Cir. 1987) (quoting *Turner v. Safle*y, 482 U.S. 78, 80 (1987)). Furthermore, restrictions on prisoners' mail are justified "only if they 'further[ ] one or more of the substantial government interests of security, order, and rehabilitation . . . [and] must be no greater than necessary or essential to the protection of the particular government interest involved.'" *Davis*, 320 F.3d at 351 (alterations in original) (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)).

The First Amendment protects an inmate's right to send and receive both legal and nonlegal

mail, although prison officials may regulate that right if the restrictions they employ are "'reasonably related to legitimate penological interests.'" *Thornburgh v. Abbott,* 490 U.S. 401, 409 (1989) (quoting *Turner v. Safley*, 482 U.S. at 89); *see also Johnson v. Goord,* 445 F.3d 532, 534 (2d Cir. 2006) (holding that prisoners do have a right – albeit a limited one – to send and receive mail) (citation omitted). Legal mail is entitled to greater protection from interference than nonlegal mail. *See Davis,* 320 F.3d at 351.

A single instance of mail tampering that does not result in the plaintiff suffering any damage is generally insufficient to support a constitutional challenge. *Morgan v. Montanye*, 516 F.2d 1367, 1371 (2d Cir. 1975). "Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'" *Davis,* 320 F.3d at 351 (quoting *Cancel v. Goord*, No. 00 CIV 2042, 2001 WL 303713, *6 (S.D.N.Y. Mar. 29, 2001) (citing *Washington v. James*, 782 F.2d 1134,1139 (2d Cir. 1986))). Indeed, courts have consistently applied *Morgan* to dismiss suits by inmates alleging unconstitutional opening of their legal mail without any showing of damages. *See Pacheo v. Comisse,* 897 F. Supp. 671, 681 (N.D.N.Y. 1995) (dismissing the inmate's claim based on a single instance in which the defendants allegedly opened his legal mail outside of his presence because "he has shown no prejudice as a result of the allegedly unauthorized opening"); *Walton v. Waldron,* 886 F. Supp. 981, 986 (N.D.N.Y. 1995) ("Existing precedent on an inmate's claim that his 'legal' mail has been improperly handled by prison officials requires a showing of harm"); *Gittens v. Sullivan,* 670 F. Supp. 119, 124 (S.D.N.Y. 1987), *aff'd,* 848 F.2d 389 (2d Cir. 1988) (holding that an inmate's allegation that his legal mail was "interfered with on one occasion is insufficient to state a cause of action given that the interference complained of did not affect plaintiff's access to the courts"); *Pickett v. Schaefer,* 503 F. Supp. 27, 28 (S.D.N.Y. 1980) ("Without explicit proof of damages, an inadvertent

violation of prisoner's mail rights does not state a claim cognizable under 42 U.S.C. § 1983").

### 4. Access to the Courts

The United States Constitution guarantees prisoners a "meaningful right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 830 (1977). This right encompasses the requirement that prison authorities "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. As the Supreme Court recognized in *Bounds*, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25.

In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court redefined the scope of inmates' constitutional right of access to courts, holding that prisoners do not have "an abstract, freestanding right to a law library or legal assistance." *Id.* at 351. "In other words, prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring "'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id.* (quoting *Bounds*, 430 U.S. at 825). The Court found that in order to establish a violation of the fundamental right of access to courts, an inmate must show more than a refusal to provide legal materials. Rather, the inmate must demonstrate "actual injury" by showing "that a nonfrivolous legal claim had been frustrated or was being impeded" due to the action or inaction of prison officials. *Id.* at 353.

### 5. Inadequate Conditions of Confinement

The Eighth Amendment of the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. AMEND. VIII. The Eighth Amendment also imposes a duty upon prison officials "to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).

To establish a violation of the Eighth Amendment based on conditions of confinement, a prisoner must establish: (1) a sufficiently serious deprivation; and (2) a sufficiently culpable state of mind. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). To satisfy the first element, the alleged deprivation must be so "'objectively, sufficiently serious' [that it resulted in the inmate being] . . . denied 'the minimal civilized measure of life's necessities.'" *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "This objective component . . . is also context specific, turning upon 'contemporary standards of decency.'" *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (citations omitted). To establish a sufficiently culpable state of mind in a conditions of confinement claim, a plaintiff must demonstrate that the prison official in question knew of the substantial risk of serious harm the inmate faced because of the conditions in question and that the official nevertheless disregarded that risk by failing to take reasonable measures to abate it. *See Farmer*, 511 U.S. at 838-42.

### 6. Excessive Force

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from "unnecessary and wanton infliction of pain" at the hands of prison officials. *Estelle v. Gamble*, 429

U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  When prison officials are "accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  "In determining whether the use of force was wanton and unnecessary," the court should evaluate "the need for application of force, relationship between that need and the amount of force used, the threat reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7 (citation and quotation marks omitted).  Not "every malevolent touch by a prison guard gives rise to a federal cause of action.  The Eighth Amendment's prohibition of cruel and usual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9 (citations and internal quotation marks omitted).

### 7.  Forced Medication

The Fourteenth Amendment protects the right of a competent person to refuse unwanted medical treatment. *See, e.g., Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 278 (1990) (recognizing "[t]he principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment").  The Second Circuit has held, moreover, that "[i]t is a firmly established principle of the common law of New York that every individual of adult years and sound mind has a right to determine what shall be done with his own body and to control the course of his medical treatment." *Kulak v. City of New York*, 88 F.3d 63, 74 (2d Cir. 1996) (quoting *Rivers v. Katz*, 67 N.Y.2d 485, 492, 495 (1986)); *see also Project Release v. Prevost*, 722 F.2d 960, 978-80 (2d Cir.

1983).  Such a right may be set aside only in narrow circumstances, including those where the patient "presents a danger to himself or other members of society or engages in dangerous or potentially destructive conduct within the institution."  *Id.*

Although a prisoner has a right to refuse medical treatment, liability for a constitutional violation is nonetheless absent unless the prisoner's individual liberty interest outweighs the relevant countervailing state interests.  *See Pabon v. Wright*, 459 F.3d 241, 252 (2d Cir. 2006) (citing *Turner*, 482 U.S. at 89); *see also Grand Jury Subpoena John Doe v. United States*, 150 F.3d 170, 172 (2d Cir. 1998) (holding that the "preservation of life, prevention of suicide, and enforcement of prison security, order, and discipline" were significant governmental interests outweighing the prisoner's liberty interest).

### 8. *Prison Administration's Failure to Process Inmate Grievances*

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  "Although state laws may in certain circumstances create a constitutionally protected entitlement to substantive liberty interests, state statutes do not create federally protected due process entitlements to specific state-mandated procedures."  *Id.* (internal citations omitted).  Further, prisoners do not have a protected due process liberty interest in the state's compliance with prison grievance procedures.  *Brown v. Graham*, No. 11-1380, 2012 WL 933993, *1 (2d Cir. Mar. 21, 2012) (citing *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)).

### *9. Taking and/or Destruction of Property by Prison Staff*

In cases where an inmate alleges a deprivation of property by prison staff, the Supreme Court has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533; *see also Rivera-Powell v. New York City Board of Election*s, 470 F.3d 458, 465 (2d Cir. 2006) ("When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post deprivation remedy"); *Icangelo v. Suffolk Cnty. Jail*, No. 12-CV-5505, 2013 WL 357601, *5 (E.D.N.Y. Jan. 28, 2013) (finding no due process violation where the plaintiff alleged that his property was misplaced by a property clerk and the state provided adequate post-deprivation remedy, which the plaintiff failed to pursue). An exception to this principle exists in cases where the deprivation in question "was caused by high-ranking officials who had final authority over the decision-making process." *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 115-16 (2d Cir. 2006); *see also DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003).

## C.    Review of Amended Complaint

In light of Plaintiff's *pro se* status, the Court has reviewed the amended complaint thoroughly and has read the allegations liberally in the light most favorable to Plaintiff. Construed liberally, Plaintiff asserts the following claims in the amended complaint: (1) First Amendment retaliation, access to the courts, and mail interference claims, and Eighth Amendment conditions of confinement and excessive force claims against Defendant Fischer; (2) First Amendment retaliation, mail

interference, denial of access to the courts, and free exercise of religion claims, Fourteenth Amendment claims for violating Plaintiff's right to refuse unwanted medical treatment and for deprivation of property, and an Eighth Amendment excessive force claim against Defendant Graham; (3) a First Amendment retaliation claim and an Eighth Amendment conditions of confinement claim against Defendant Brower; (4) First Amendment mail interference, denial of access to the courts, free exercise of religion, and retaliation claims, and an Eighth Amendment conditions of confinement claim against Defendant Chandler; (5) First Amendment interference with mail and denial of access to the courts claims, and an Eighth Amendment conditions of confinement claim against Defendant Schug; (6) a First Amendment mail interference claim against Defendant Putman; (7) First Amendment retaliation, mail interference, and denial of access to the courts claims, and an Eighth Amendment conditions of confinement claim against Defendant Casler; (8) First Amendment retaliation, denial of access to the courts, and mail interference claims, and an Eighth Amendment conditions of confinement claim against Defendant Heath; (9) First Amendment retaliation and denial of access to the courts claims, and an Eighth Amendment conditions of confinement claim against Defendant Fagan; (10) an Eighth Amendment excessive force claim and a Fourteenth Amendment due process claim for property deprivation against Defendant Vasile; and (11) a Fourteenth Amendment due process claim and a First Amendment denial of access to the courts claim against Defendant Parmiter.[1]

### 1. Count One

Plaintiff alleges that Defendant Fisher engaged in retaliation against him for filing a previous

---

[1] Plaintiff's amended complaint sets forth eleven "Counts."  Each "Count" asserts claims against one Defendant.  For clarity, the Court will therefore review Plaintiff's amended complaint by "Count."

federal civil rights lawsuit naming Fischer as a defendant, for filing grievances, and for his religious beliefs. Dkt. No. 30 at 7. Plaintiff claims that Defendant Fischer retaliated against him by, among other things, directing his agents to use excessive force and to employ chemical agents against him without justification, by subjecting him to inadequate conditions of confinement, by giving his staff permission to tamper with Plaintiff's legal mail, and by refusing to mail out Plaintiff's civil rights claims. *Id.* at 8.

Construed liberally, Plaintiff asserts the following claims against Defendant Fischer: (1) a First Amendment retaliation claim; (2) a First Amendment access to the courts claim; (3) a First Amendment mail interference claim; (4) an Eighth Amendment conditions of confinement claim; and (5) an Eighth Amendment excessive force claim.

In support of his claim for denial of access to the courts against Defendant Fischer, Plaintiff alleges only that Defendant Fischer and his agents refused to mail out his civil rights claims to the court. *See* Dkt. No. 30 at 8. "Interference with legal mail implicates a prison inmate's rights to access to the courts. . . . [However, t]o state a claim for denial of access to the courts . . . due to interference with legal mail . . . a plaintiff must allege that the defendant took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim." *Davis*, 320 F.3d at 351 (quotation marks and citations omitted).

Here, Plaintiff does not allege that Defendant Fischer's actions "caused actual injury, i.e., took or was responsible for actions that hindered [plaintiff's] efforts to pursue a legal claim." *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) (quotation marks and citations omitted). As such, Plaintiff fails to state a plausible denial of access to the courts claim against Defendant Fischer. Thus, Plaintiff's First Amendment denial of access to the courts claim against Defendant Fischer is dismissed

without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

At this early stage of the litigation, the Court finds that a response by Defendant Fischer to the following claims is warranted: (1) the First Amendment retaliation claim; (2) the First Amendment mail interference claim; (3) the Eighth Amendment conditions of confinement claim; and (4) the Eighth Amendment excessive force claim.

### 2. Count Two

Plaintiff alleges that Defendant Graham, superintendent at Auburn C.F., engaged in retaliation against him for filing a previous federal civil rights lawsuit naming Graham as a defendant, for filing grievances, and for his religious beliefs. *See* Dkt. No. 30 at 13. Plaintiff alleges that Defendant Graham retaliated against him by, among other things, ordering Defendant Lieutenant Vasile to take Plaintiff to the facility infirmary for medical treatment against his religious beliefs, by directing corrections officers to use excessive force against him and to employ chemical agents without justification, and by tampering with his mail. *See id.* at 9-10. Plaintiff also claims that Defendant Graham removed all of Plaintiff's legal documents from his cell and destroyed them without due process. *Id.* at 10.

Plaintiff alleges that Defendant Graham interfered with his legal mail by "not mailing legal documents and other correspondence" to attorneys and to the court and by "reading attorney privileged mail." *Id.* at 11. Plaintiff also alleges that, on one occasion, Defendant Graham kept legal transcripts mailed to Plaintiff in the facility's package room for over three months after receiving them and that, as a result, a case Plaintiff had pending in the Eastern District of New York was dismissed by the court

14

for failure to file a memorandum of law. *Id.* at 12. Plaintiff also claims that Defendant Graham refused to provide him with mailing supplies or access to the facility's law library. *Id.* at 13.

Construed liberally, Plaintiff asserts the following claims against Defendant Graham: (1) a First Amendment retaliation claim; (2) a First Amendment mail interference claim; (3) a First Amendment access to the courts claim; (4) a First Amendment Free Exercise claim; (5) a Fourteenth Amendment Due Process claim for violating Plaintiff's right to refuse medical treatment; (6) a Fourteenth Amendment Due Process claim for deprivation of property; and (7) an Eighth Amendment Excessive Force claim.

Plaintiff claims that Defendant Graham ordered Defendant Vasile to take Plaintiff to the infirmary for medical treatment "against [his] religious belief." *Id.* at 9. Apart from this reference, Plaintiff fails to provide any information about – or even to identify by name – his religion. Without more, Plaintiff fails to allege facts sufficient to plausibly suggest that his refusal of medical treatment is "religious in the person's scheme of beliefs" and that "said beliefs are sincerely held" as required to state a First Amendment Free Exercise claim. *Farid*, 850 F.2d at 926. Thus, Plaintiff's First Amendment Free Exercise claim against Defendant Graham is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

At this early stage of the litigation, the Court finds that a response by Defendant Graham to the following claims is warranted: (1) the First Amendment retaliation claim; (2) the First Amendment mail interference claim; (3) the First Amendment access to the courts claim; (4) the Fourteenth Amendment Due Process claim for violating Plaintiff's right to refuse medical treatment; (5) the Fourteenth Amendment Due Process claim for deprivation of property; and (6) the Eighth Amendment

15

Excessive Force claim.

### 3.  Count Three

Plaintiff alleges that Defendant Brower, the officer in charge of the special housing unit at Auburn C.F., engaged in retaliation against him for filing a previous federal civil rights lawsuit naming Brower as a defendant, for filing grievances, and for his religious beliefs.  *See* Dkt. No. 30 at 14-15. Plaintiff alleges that Defendant Brower retaliated against him by, among other things, having the water turned off in his cell for thirty (30) days.  *Id.* at 15.

Construed liberally, Plaintiff asserts the following claims against Defendant Brower: (1) a First Amendment retaliation claim and (2) an Eighth Amendment conditions of confinement claim.  At this early stage of the litigation, the Court finds that Plaintiff has alleged enough to require a response from Defendant Brower to the claims against him.

### 4.  Count Four

Plaintiff alleges that Defendant Chandler interfered with his legal mail and tampered with his food in order "to get [Plaintiff] . . . to shave [his] beard against [his] religious belief."  *See* Dkt. No. 30 at 16-17.  Plaintiff claims that Defendant Chandler interfered with his legal mail by refusing to send Plaintiff's outgoing mail and by refusing to give Plaintiff mail sent to him.  *See id.* at 17-18.  As a result of Defendant Chandler's refusal to mail his legal documents, Plaintiff alleges that he "lost [an] appeal and lawsuit."  *Id.* at 18.  Plaintiff also claims that Defendant Chandler tampered with his food by allowing food service staff to place dirty gloves on his food tray and to provide him with inadequate food at meal times and, as a result, Plaintiff claims that he "lost weight and had no energy to do

16

anything." *Id.*

Construed liberally, Plaintiff asserts the following claims against Defendant Chandler: (1) a First Amendment mail interference claim; (2) a First Amendment denial of access to the courts claim; (3) a First Amendment free exercise of religion claim; (4) a First Amendment retaliation claim; and (5) an Eighth Amendment conditions of confinement claim.

Plaintiff's allegations against Defendant Chandler are insufficient to state a First Amendment free exercise of religion claim. Apart from his bald assertion that Defendant Chandler attempted to force him to shave his beard against his religious beliefs, Plaintiff fails to provide any information about, or even to identify by name, his religion or to explain its prohibition against shaving. *Id.* at 17. Without more, Plaintiff fails to allege facts indicating that his refusal to shave is "religious in the person's scheme of beliefs" and that said beliefs are sincerely held" as required to state a First Amendment free exercise claim. *Farid*, 850 F.2d at 926.

For the reasons set forth above, Plaintiff's First Amendment free exercise claim against Defendant Chandler is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

At this early stage of the litigation, the Court finds that Plaintiff has alleged enough to warrant a response from Defendant Chandler to the following claims: (1) the First Amendment mail interference claim; (2) the First Amendment denial of access to the courts claim; (3) the First Amendment retaliation claim; and (4) the Eighth Amendment conditions of confinement claim.

### 5. *Count Five*

Plaintiff alleges that Defendant Schug engaged in retaliation against him for filing federal civil

rights lawsuits, for filing grievances, and for his religious beliefs. Dkt. No. 30 at 19. Plaintiff alleges that Defendant Schug retaliated by, among other things, interfering with his legal mail and tampering with his food. *Id.* at 20.

Plaintiff asserts that Defendant Schug returned an envelope containing legal mail to the sender without Plaintiff's authorization, falsely indicating on the envelope that Plaintiff had refused to accept it. *Id.* at 19. Plaintiff alleges that on December 29, 2012, Defendant Schug tampered with his dinner by providing inadequate portions of food and by using dirty gloves to serve him. *Id.* at 20. As a result, Plaintiff contends that Defendant Schug put him "in danger of getting any kind of health risk [by] keeping [him] undernourished and frail." *Id.*

Construed liberally, Plaintiff asserts the following claims against Defendant Schug: (1) a First Amendment interference with mail claim; (2) a First Amendment denial of access to the courts claim; and (2) an Eighth Amendment conditions of confinement claim.

Regarding Plaintiff's mail interference claim, it appears that Plaintiff alleges only one instance of mail tampering by Defendant Schug. *See id.* at 19. Without more, this single incident of mail interference – alleged to have occurred on June 29, 2012 – is insufficient to plausibly suggest a First Amendment mail interference claim against Defendant Schug. *See Morgan*, 516 F.2d at 1371 (finding that a single instance of mail tampering that does not result in the plaintiff suffering any damage is generally insufficient to support a constitutional challenge); *see also Davis*, 320 F.3d at 351 (holding that a First Amendment mail interference claim requires showing "that prison officials 'regularly and unjustifiably interfered with the incoming legal mail"). Plaintiff also fails to allege any actual harm resulting from Schug's interference with his mail as required to state a First Amendment claim on this

basis.[2] *See Walton*, 886 F. Supp. at 986 ("Existing precedent on an inmate's claim that his 'legal' mail has been improperly handled by prison officials requires a showing of harm."); *Gittens,* 670 F. Supp. at 124 (holding that an inmate's allegation that his legal mail was "interfered with on one occasion is insufficient to state a cause of action given that the interference complained of did not affect plaintiff's access to the courts"); *Pickett,* 503 F. Supp. at 28 ("Without explicit proof of damages, an inadvertent violation of prisoner's mail rights does not state a claim cognizable under 42 U.S.C. § 1983"). Accordingly, Plaintiff's First Amendment mail interference claim against Defendant Schug fails.

To the extent that Plaintiff asserts that he was denied access to the courts as a result of Defendant Schug's interference with his mail, Plaintiff's allegations are insufficient to support such a claim. Even accepting as true all of the allegations in Plaintiff's amended complaint and drawing all inferences in Plaintiff's favor, Plaintiff does not allege facts sufficient to plausibly suggest that he sustained an "actual injury" in the form of a "nonfrivolous legal claim that had been frustrated or was being impeded" due to Defendant Schug's actions. *Lewis*, 518 U.S. at 353. Accordingly, Plaintiff's First Amendment denial of access to the courts claim against Defendant Schug fails.

Plaintiff's allegations against Defendant Schug are also insufficient to state an Eighth Amendment claim for inadequate conditions of confinement. In support of such a claim, Plaintiff claims that Defendant Schug tampered with his food on December 29, 2012, providing him with inadequate portions and handling his food with unsanitary gloves. *See* Dkt. No. 30 at 20. This single

---

[2] Plaintiff alleges that he experienced "mental stress [and] psychological trauma" as a result of Defendant Schug's actions because the letter returned by Defendant Schug on June 29, 2012 "could have come from the Court, attorney, or personal letter from the judge in any of my ongoing cases." Dkt. No. 30 at 19. There is nothing, however, in Plaintiff's allegations regarding Defendant Schug to plausibly suggest that any *actual* constitutional injury resulted from Defendant Schug's interference with his mail.

instance of food tampering is not a deprivation so "objectively, sufficiently serious" that it resulted in Plaintiff being denied "the minimal civilized measure of life's necessities." *Gaston*, 249 F.3d at 164 (quoting *Farmer*, 511 U.S. at 834). Plaintiff also fails to allege facts plausibly suggesting that Defendant Schug knew that tampering with his food posed a substantial risk of serious harm to Plaintiff and that he disregarded that risk by failing to take reasonable measures to abate it. *See Farmer*, 511 U.S. at 838-42. Therefore, Plaintiff's Eighth Amendment conditions of confinement claim against Defendant Schug fails.

For the reasons set forth above, Plaintiff's claims against Defendant Schug are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 6. Count Six

Plaintiff alleges that Defendant Putnam interfered with his legal mail by refusing to provide Plaintiff with his mail on July 9, 2012. Dkt. No. 30 at 20. Liberally construed, Plaintiff asserts a First Amendment mail interference claim against Defendant Putnam. However, Plaintiff alleges only one instance of mail tampering by Defendant Putnam and fails to include any facts indicating that this instance resulted in an "actual injury" as required for a First Amendment claim. *See Morga*n, 516 F.2d at 1371. Plaintiff's allegations against Defendant Putnam are therefore insufficient to state a plausible claim for mail interference.

For the reasons set forth above, Plaintiff's First Amendment mail interference claim – his sole claim against Defendant Putnam – is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### *7. Count Seven*

Plaintiff alleges that Defendant Casler engaged in retaliation against him for filing federal civil rights lawsuits, for filing grievances, and for his religious beliefs. *See* Dkt. No. 30 at 22. Plaintiff alleges that Defendant Casler retaliated against him by, among other things, tampering with his legal mail, tampering with and withholding food, and by removing and destroying documents from his cell. *Id.* at 21-23.

Plaintiff claims that Defendant Casler refused to send his legal mail to the court and to his attorney. *Id.* at 23. In one instance, Plaintiff alleges that Defendant Casler's refusal to mail a letter requesting an extension of time in a case pending in the Eastern District of New York resulted in the judge dismissing Plaintiff's case. *Id.* Plaintiff also asserts that Defendant Casler has taken legal documents and other material from his cell when Plaintiff was not there. *Id.*

Liberally construed, Plaintiff asserts the following claims against Defendant Casler: (1) a First Amendment retaliation claim; (2) a First Amendment mail interference claim; (3) a First Amendment denial of access to the courts claim; and (4) an Eighth Amendment conditions of confinement claim.

Plaintiff's allegations against Defendant Casler are insufficient to state an Eighth Amendment conditions of confinement claim. *Id.* Plaintiff's only allegation against Defendant Casler pertaining to conditions of confinement is his assertion that Defendant Casler tampered with and withheld his food. *Id.* Even accepting all of Plaintiff's factual allegations as true, this bare allegation, asserted without any supporting facts, does not plausibly suggest a deprivation so "objectively, sufficiently serious" that it resulted in Plaintiff being denied "the minimal civilized measure of life's necessities." *Gaston*, 249 F.3d at 164.

For the reasons set forth above, Plaintiff's Eighth Amendment conditions of confinement claim

against Defendant Casler is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

At this early stage of the litigation, the Court finds that a response by Defendant Casler to Plaintiff's First Amendment retaliation, First Amendment mail interference, and First Amendment denial of access to the courts claims is warranted.

### 8.  *Count Eight*

Plaintiff alleges that Defendant Heath engaged in retaliation against him for filing federal civil rights lawsuits, for filing grievances, and for his religious beliefs.  Dkt. No. 30 at 24.  He alleges that Defendant Heath retaliated against him by, among other things, interfering with his legal mail and tampering with his food.  *Id.* at 25.

Plaintiff asserts that Defendant Heath refused to give him incoming legal mail and to send outgoing mail to attorneys and to the court.  *Id.*  As a result of Defendant Heath's actions, Plaintiff alleges that the judge in one of his pending cases did not receive Plaintiff's motions and other correspondence.  *Id.*

Construed liberally, Plaintiff alleges the following claims against Defendant Heath: (1) a First Amendment retaliation claim; (2) a First Amendment access to the courts claim; (3) a First Amendment mail interference claim; and (4) an Eighth Amendment conditions of confinement claim.

Plaintiff's allegations against Defendant Heath are insufficient to state an Eighth Amendment claim for inadequate conditions of confinement.  Plaintiff's only allegation concerning conditions of confinement against Defendant Heath is his claim that Defendant Heath has tampered with his food for "over a year."  *Id.* at 24.  This assertion, which Plaintiff has failed to support with any specific facts

about Defendant Heath's actions, is not "sufficiently serious" to state an Eighth Amendment conditions of confinement claim.

For the reasons set forth above, Plaintiff's Eighth Amendment conditions of confinement claim against Defendant Heath is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

At this early stage of the litigation, the Court finds that a response by Defendant Heath to Plaintiff's First Amendment retaliation, First Amendment denial of access to the courts, and First Amendment mail interference claims is warranted.


### 9. Count Nine

Plaintiff alleges that Defendant Fagan retaliated against him for filing federal civil rights lawsuits, for filing grievances, and for his religious beliefs. *See* Dkt. No. 30 at 26-27. Plaintiff alleges that Defendant Fagan engaged in retaliation against him by, among other things, tampering with his food, refusing to give him legal supplies, providing him with dirty linens and towels, refusing to give him hot water, and by making unwanted sexual advances. *Id.* at 26-28.

Construed liberally, Plaintiff asserts the following claims against Defendant Fagan: (1) a First Amendment retaliation claim, (2) a First Amendment denial of access to the courts claim, and (3) an Eighth Amendment conditions of confinement claim.

Although Plaintiff alleges that Defendant Fagan refused to provide him legal supplies for "up to 7 [weeks] or more," Plaintiff does not allege that Defendant Fagan's actions resulted in any "actual injury" to a "nonfrivolous legal claim" as required to state a First Amendment claim for denial of access to the courts. *Lewis*, 518 U.S. at 353.

Plaintiff's factual allegations are also insufficient to plausibly suggest an Eighth Amendment claim against Defendant Fagan based on inadequate conditions of confinement. Plaintiff allegations against Defendant Fagan regarding his conditions of confinement – that Defendant Fagan tampered with his food, provided him with dirty linens and towels, and refused to give him hot water – are not so "'objectively, sufficiently serious' [that they resulted in plaintiff being] . . . denied 'the minimal civilized measure of life's necessities.'" *Gaston*, 249 F.3d at 164. As for Plaintiff's claim that Defendant Fagan made unwanted sexual advances, Plaintiff alleges no facts to suggest that Defendant Fagan's sexual advances were "severe enough to be 'objectively, sufficiently serious' . . . or cumulatively egregious in the harm they inflicted" to "involve a harm of federal constitutional proportions as defined by the Supreme Court." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (dismissing as inadequate a prisoner's claim that a female corrections officer made a possible pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pushed her vagina against his penis); *Morales v. Mackalm*, 278 F.3d 126, 132 (2d. Cir. 2002) (finding that allegations that staff member asked the plaintiff to have sex with her and to masturbate in front of her and other staff members "do not even rise to the level of those made by the plaintiff in *Boddie*, [and] do not state a claim for sexual harassment in violation of the Eighth Amendment to the United States Constitution"); *Jones v. Harris*, No. 08-CV-4003, 2009 WL 3425640, *2, *8 (S.D.N.Y. Oct. 13, 2009) (finding that an allegation that a corrections officer requested sexual favors is insufficient to state constitutional claim).

For the reasons set forth above, Plaintiff's First Amendment denial of access to the courts claim and his Eighth Amendment conditions of confinement claim against Defendant Fagan are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state

a claim upon which relief may be granted.

At this early stage of the litigation, however, the Court finds that a response by Defendant Fagan to Plaintiff's First Amendment retaliation claim is warranted.


### 10. Count Ten

Plaintiff alleges that Defendant Vasile forced him to go to the infirmary for medical treatment against his religious beliefs, used excessive force and chemical agents against him without justification, and removed legal documents and other property from his cell. *See* Dkt. No. 30 at 29-31.

Plaintiff alleges that in order to force him to report to the infirmary for medical treatment as ordered by facility staff, Defendant Vasile used excessive force on multiple occasions to extract him from his cell. *See id.* at 29. Plaintiff asserts that he had refused to report to the infirmary voluntarily for medical treatment because receiving such treatment would violate his religious beliefs. *See id.* Plaintiff alleges that while attempting to force him out of the cell, Defendant Vasile and other officers under his direction assaulted him using night sticks and shields, and that Defendant Vasile sprayed a chemical agent into his eyes. *See id.* at 29-30. During the assault, Plaintiff alleges that an officer under Defendant Vasile's direction broke Plaintiff's glasses in order to prevent him from reading or writing a complaint. *See id.* at 30. Plaintiff asserts that these assaults occurred approximately four times in the year preceding the filing of the amended complaint. *See id.*

Liberally construed, Plaintiff asserts the following claims against Defendant Vasile: (1) an Eighth Amendment excessive force claim; and (2) a Fourteenth Amendment due process claim for deprivation of property.

Plaintiff's allegations against Defendant Vasile are insufficient to state a Fourteenth

Amendment claim for deprivation of property. Plaintiff claims that Defendant Vasile entered his cell and took legal documents and other property without his permission. *Id.* at 29, 31. However, the Supreme Court has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533.

For the reasons set forth above, Plaintiff's Fourteenth Amendment due process claim against Defendant Vasile for deprivation of property is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

At this early stage of the litigation, the Court finds that a response by Defendant Vasile to Plaintiff's Eighth Amendment excessive force claim is warranted.

### 11. Count Eleven

Plaintiff alleges that Defendant Parmiter, the grievance supervisor at Auburn C.F., refused to process his grievances in violation of the facility's established grievance procedure. *See* Dkt. No. 30 at 32. Plaintiff claims that Defendant Parmiter refused to assign grievance numbers or to investigate his claims, choosing instead to process only the claims that suited her. *See id.* Plaintiff asserts that Defendant Parmiter's refusal to process all of his grievances deprived him of meaningful access to the courts.

Plaintiff's factual allegations against Defendant Parmiter fail to state a claim for a Fourteenth Amendment due process violation. Although inmates are entitled to certain due process protections,

the Second Circuit has held that prisoners do not have a protected due process liberty interest in the state's compliance with prison grievance procedures. *See Brown*, 2012 WL 933993, at *1 (citing *Holcomb*, 337 F.3d at 224); *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) (holding that "[p]articipation in an inmate grievance process is not a constitutionally protected right")) (other citations omitted); *see also Shell v. Brzezniak*, 365 F. Supp. 2d 362, 369-70 (W.D.N.Y. 2005) (holding that "[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim") (citation omitted); *Cancel v. Goord*, No. 00. CIV. 2042, 2001 WL 303713, *3 (S.D.N.Y. Mar. 29, 2001) (finding that "inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983").

Moreover, while the Constitution does mandate that inmates be afforded access to the courts, *see Bounds*, 430 U.S. at 823, the alleged interference with Plaintiff's ability to file grievances does not amount to interference with the right of access to the courts, since under the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), a plaintiff whose access to the grievance process has been hindered or foiled by actions of prison officials is excused from the PLRA's exhaustion requirement and permitted to file suit without having completed that process. *See White v.* Clark, No. 9:12-cv-0986 (NAM/RFT), 2012 WL 5877160 (N.D.N.Y. Nov. 20, 2012) (dismissing denial of access to the courts claim based upon interference with grievances) (citing *Hemphill v. New York*, 380 F.3d 680, 686-91 (2d Cir. 2004)); *see also Gambino v. Payne*, No. 12–cv–0824, 2013 WL 1337319 (W.D.N.Y. Mar. 29, 2013). As such, Plaintiff also fails to state a First Amendment denial of access to the courts claim against Defendant Parmiter.

For the reasons set forth above, Plaintiff's Fourteenth Amendment due process claim and his First Amendment denial of access to the courts claim against Defendant Parmiter are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 12. Summary

The following claims are dismissed with prejudice: Plaintiff's Fourteenth Amendment due process claim against Defendant Vasile for deprivation of property; Plaintiff's Fourteenth Amendment due process claim against Defendant Parmiter for deprivation of property; and Plaintiff's First Amendment denial of access to the courts claim against Defendant Parmiter.[3]

The following claims and Defendants are dismissed without prejudice: (1) Plaintiff's First Amendment denial of access to the courts claim against Defendant Fischer; (2) Plaintiff's First Amendment free exercise claim against Defendant Graham; (3) Plaintiff's First Amendment free exercise claim against Defendant Chandler; (4) Plaintiff's First Amendment mail interference and denial of access to the courts, and Eighth Amendment conditions of confinement claims against Defendant Schug; (5) Plaintiff's First Amendment mail interference claim against Defendant Putnam;

---

[3] "Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted); *accord, Brown v. Peters*, No. 6:95-CV-1641 (RSP/DS), 1997 WL 599355, *1 (N.D.N.Y. Sept. 22, 1997) (holding that "the court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile") (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that denying a request for leave to amend not an abuse of discretion where such an amendment would have been futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied") (citation omitted).

(6) Plaintiff's Eighth Amendment conditions of confinement claim against Defendant Casler; (7) Plaintiff's Eighth Amendment conditions of confinement claim against Defendant Heath; (8) Plaintiff's First Amendment access to the courts and Eighth Amendment conditions of confinement claims against Defendant Fagan; and (9) Defendants Putnam, Schug, and Parmiter.[4]

Mindful of the requirement to liberally construe pro se pleadings, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that the complaint alleges enough to warrant a responsive pleading from the designated Defendants to the following claims: (1) the First Amendment retaliation and mail interference claims, and the Eighth Amendment conditions of confinement and excessive force claims against Defendant Fischer; (2) the First Amendment retaliation, mail interference, denial of access to the courts claims, the Eighth Amendment excessive force claim, and the Fourteenth Amendment due process claims for violating Plaintiff's right to refuse unwanted medical care and for deprivation of property against Defendant Graham; (3) the First Amendment retaliation claim and the Eighth Amendment conditions of confinement claim against Defendant Brower; (4) the First Amendment retaliation, mail interference, and denial of access to the courts claims, and the Eighth Amendment conditions of confinement claim against Defendant Chandler; (5) the First Amendment retaliation, mail interference, and denial of access to the courts claims against Defendant Casler; (6) the First Amendment retaliation, mail interference, and denial of access to the courts claims against Defendant Heath; (7) the First Amendment retaliation claim against

_____

[4] Should Plaintiff wish to amend any claim dismissed without prejudice, he may file an amended complaint with the Court for consideration. Plaintiff is advised that any amended complaint must be a complete pleading that will replace the original complaint in its entirety, and may not incorporate by reference any portion of the original complaint. *See* N.D.N.Y. L.R. 7.1(a) (4). Any amended complaint filed will be subject to review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

Defendant Fagan; and (8) the Eighth Amendment excessive force claim against Defendant Vasile. In so ruling, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

### III. PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTIVE RELIEF

Preliminary injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal citations omitted). To prevail on a motion for preliminary injunctive relief, the party seeking the injunction must demonstrate the following: (1) that he will suffer irreparable harm if the preliminary injunctive relief is not granted, and (2) *either* that he is likely to succeed on the merits *or* "that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Id.* (citation omitted). Finally, in cases where the moving party seeks to alter the status quo with a "mandatory" rather than a "prohibitory" preliminary injunction, such an injunction will issue "only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Mkts, Inc. v. VCG Special Opportunities Master Fund, Ltd,* 598 F.3d 30, 35 (2d Cir. 2010) (internal citations omitted). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer*, 511 U.S. at 846-47 (other citations omitted)).

In his first motion, Plaintiff asserts that officers at Auburn C.F. refuse to give Plaintiff his legal

mail or to mail out his "legal work." *See* Dkt. No. 24 at 1. Plaintiff also alleges that corrections

officers at Auburn C.F. took legal documents from Plaintiff. *Id.* Plaintiff does not indicate what relief

he seeks from the Court. In his second motion, Plaintiff asks for a Court Order requiring Defendants

to turn over to the Court all documents and property taken from Plaintiff's cell "before it's destroyed."

Dkt. No. 34 at 1.

In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory

and injunctive relief against officials of that facility. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d.

Cir. 2006) (internal citations omitted). Since Plaintiff is no longer incarcerated at Auburn C.F., his

motion for preliminary injunctive relief against any Auburn C.F. employees or with respect to his

conditions of confinement at Auburn C.F. is denied as moot. *See id*; *see also Thompson v. Carter*, 284

F.3d 411, 415 (2d Cir. 2002) (holding that "a prisoner's transfer to a different correctional facility

generally moots his request for injunctive relief against employees of the transferor facility") (citation

omitted).

Although Plaintiff's requests for injunctive relief are not moot against any Defendants who are

state-wide DOCCS officials, *see Verley v. Wright*, No. 02 Civ. 1182, 2007 WL 2822199, *9 (S.D.N.Y.

Sep. 27, 2007), Plaintiff has nonetheless failed to substantiate any allegations of irreparable harm with

evidence in admissible form or to demonstrate, with evidence, a likelihood of success on the merits of

his underlying claims, or sufficiently serious questions going to the merits and a balance of hardships

tipping decidedly in his favor. *See Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F. Supp. 547, 561 (E.D.N.Y.

1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary

injunction"); *Hancock v. Essential Res., Inc.*, 792 F. Supp. 924, 928 (S.D.N.Y. 1992) ("Preliminary

injunctive relief cannot rest on mere hypothetical"). Accordingly, Plaintiff's first and second motions

for preliminary injunctive relief are denied in their entirety.

In his third motion, Plaintiff alleges that after his transfer to Clinton C.F., LaValley, the superintendent at Clinton C.F., has refused to give Plaintiff his legal documents and personal property. Dkt. No. 39 at 1. Plaintiff asks the Court to order Clinton C.F. staff to transfer "the evidence in this case" to the Court "before it's destroyed." *Id.*

With this motion, Plaintiff seeks to enjoin the actions of non-parties. Since the Court lacks subject matter jurisdiction over the actions of individuals not party to this action, preliminary injunctive relief is not available for this purpose. *See Stewart v. United States I.N.S.*, 762 F.2d 193, 198-99 (2d Cir. 1985) (holding that preliminary injunctive relief may be obtained "[o]nly after an action has been commenced"). Moreover, "[t]o prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." *Candelaria v. Baker*, No. 00-CV-0912, 2006 WL 618576, *3 (W.D.N.Y. Mar. 10, 2006) (citations omitted); *see also Scarborough v. Evans*, No. 9:09-CV-0850 (NAM/DEP), 2010 WL 1608950, *2 (N.D.N.Y. Apr. 20, 2010) (Mordue, C.J.) (denying motion for preliminary injunction alleging use of excessive force and denial of medical care by non-parties where the complaint alleged denial of mental health care and proper conditions of confinement). Here, Plaintiff's request to enjoin the actions of Clinton C.F. staff is unrelated to Plaintiff's underlying claims, all of which concern his conditions of confinement at Auburn C.F. Therefore, Plaintiff's third request for injunctive relief (Dkt. No. 39) is denied.

## IV. CONCLUSION

**WHEREFORE**, the Court hereby

**ORDERS** that the following claims are **DISMISSED with prejudice**: Plaintiff's Fourteenth Amendment due process claim against Defendant Vasile for deprivation of property; Plaintiff's Fourteenth Amendment due process claim against Defendant Parmiter for deprivation of property; and Plaintiff's First Amendment denial of access to the courts claim against Defendant Parmiter; and the Court further

**ORDERS** that the following claims are **DISMISSED without prejudice**: Plaintiff's First Amendment denial of access to the courts claim against Defendant Fischer; Plaintiff's First Amendment free exercise claim against Defendant Graham; Plaintiff's First Amendment free exercise claim against Defendant Chandler; Plaintiff's First Amendment mail interference and denial of access to the courts, and Eighth Amendment conditions of confinement claims against Defendant Schug; Plaintiff's First Amendment mail interference claim against Defendant Putnam; Plaintiff's Eighth Amendment conditions of confinement claim against Defendant Casler; Plaintiff's Eighth Amendment conditions of confinement claim against Defendant Heath; and Plaintiff's First Amendment access to the courts and Eighth Amendment conditions of confinement claims against Defendant Fagan; and the Court further

**ORDERS** that Defendants Schug, Putnam, and Parmiter are **DISMISSED without prejudice**; and the Court further

**ORDERS** that Plaintiff's motions for preliminary injunctive relief (Dkt. Nos. 24, 34, and 39) are **DENIED**; and the Court further

**ORDERS** that the Clerk shall issue summonses and forward them, along with copies of the amended complaint, to the United States Marshal for service upon the remaining Defendants. The Clerk shall forward a copy of the summons and amended complaint by mail to the Office of the New

York State Attorney General, together with a copy of this Decision and Order; and the Court further

**ORDERS** that Defendants, or their counsel, shall file a response to the remaining claims in the complaint as provided for in Rule 12 of the Federal Rules of Civil Procedure after service of process on the Defendants; and the Court further

**ORDERS** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to do so may result in the dismissal of this action.** All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court; and the Court further

**ORDERS** that the Clerk serve a copy of this Decision and Order on Plaintiff.

**IT IS SO ORDERED.**

Dated: February 6, 2014
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

34